UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| **Kelly West and Doris Ann Kershaw,**<br><br>    **Plaintiffs;**<br><br> v.<br><br>**Bob Brooks, individually; Tammy Reagan, individually; and Claiborne County, Tennessee;**<br><br>    **Defendants.** | **Case No.**<br>_____ |

# COMPLAINT

Plaintiffs, by and through counsel, state their claims against Defendants alleging as follows:

## INTRODUCTION

1. This action arises from Defendants' deprivation of Plaintiffs' Constitutional rights under color of law.

2. Defendants employed Plaintiffs as jailers at the Claiborne County Jail.

3. On January 13, 2022, on her day off, Plaintiff West posted on Facebook a photo of Joshua Russell, who is a candidate for Claiborne County Sheriff opposing Defendant Sheriff Brooks.

4. Also on January 13, 2022, on her day off, Plaintiff Kershaw "liked" and "loved" the post and wrote that Russell had her vote.

5. Defendant Reagan, who is the Administrator of the Claiborne County Jail, viewed the post.

6. The next day, January 14, 2022, Defendants fired Plaintiffs for the Facebook post.

7. Defendants' firing of Plaintiffs is a violation of, among other things, Plaintiffs' clearly established constitutional right to political speech under the First Amendment.

## JURISDICTION AND VENUE

8. Plaintiffs brings their claims pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

9. This court has jurisdiction over this matter.

10. All Defendants are subject to the jurisdiction of this Court.

11. Venue is proper in this forum as Defendants reside in this District in the Knoxville Division.

## PARTIES

12. Plaintiff West is a citizen and resident of Tennessee and this District.

13. Plaintiff Kershaw is a citizen and resident of Tennessee and this District.

14. Defendant Bob Brooks is an individual and, at all times relevant to this Complaint, was the Sheriff of Claiborne County, Tennessee. Defendant Brooks is sued in his individual capacity.

15. Defendant Tammy Reagan is individual and, at all times relevant to this Complaint, was Jail Administrator for the Claiborne County Jail (the "jail") that is run and is under the control of Defendant Brooks as Sheriff of Claiborne County. Defendant Reagan is sued in her individual capacity.

16. The jail is located at 415 Straight Creek Road, New Tazewell, Claiborne County, Tennessee.

17. Claiborne County, Tennessee, is a county existing pursuant to the laws of the State of Tennessee.

18. At all times material to this action, Defendants acted under color of law.

## FACTS

19. At all times material to this action, Defendant Brooks was the Claiborne County Sheriff, and one of his main duties as sheriff was to run the jail.

20. At all times material to this action, Claiborne County employed Defendant Reagan as Jail Administrator. Defendant Reagan's job as Jail Administrator was to run the jail under the direction of the Sheriff Brooks.

21. At all times material to this action, Defendants Brooks and Reagan were acting in the course and scope of their employment and under the color of law.

22. Defendants Brooks and Reagan hired Plaintiff West as a jailer on December 26, 2019.

23. Defendants Brooks and Reagan hired Plaintiff Kershaw as jailer on May 1, 2019.

24. Both Plaintiffs worked for Defendants as jailers from the time they were hired until they were fired on January 14, 2022.

25. During their employment, neither Plaintiff ever received a verbal or written notice of being disciplined for job performance or for not having followed jail policies.

26. The jail is part of the Claiborne County Justice Center located at 415 Straight Creek Road, New Tazewell, Tennessee. That building houses the jail, the Sheriff's Office, and the 911 center, among other things.

27. Claiborne County had a population of 32,043 as of April 1, 2020, according to the U.S. Census Bureau.

28. Claiborne County law enforcement is of the size such that most of those in law enforcement who work in the Justice Center building know or were at least familiar with others in law enforcement who work in the building.

29. Plaintiff Kershaw's sister is married to Joshua Russell, who is a candidate for Sheriff of Claiborne County running against Defendant Brooks.

30. Joshua Russell had previously worked in the Claiborne County Justice Center located at 415 Straight Creek Road in the 911 center. Russell's wife worked in the building as well.

31. Thus, at all times material to this complaint, Defendants knew that Kershaw's sister was married to Joshua Russell.

### The Facebook Post

32. On January 13, 2022, both Plaintiffs had the day off from work and used the Facebook application/web site on their own time.

33. Plaintiff West posted on her personal Facebook page a photo of Joshua Russell with the words "Elect Russell for Sheriff 2022 Claiborne County" printed on the photo:



34. Plaintiff West wrote in the post, "Go Josh Russell."

35. Plaintiff Kershaw, through her own personal Facebook account, "liked" and "loved" the post, meaning that she posted the thumbs up emoji and the heart emoji, which signify that she approved of the post.

36. Plaintiff Kershaw also wrote in the comments, "He got my vote."

37. Plaintiff West's post states at the top that "Kelly West is with Ann Williams Kershaw," although the two were not physically together at the time.

38. The Facebook post is public, and therefore the general public on Facebook could see Plaintiff West's original Facebook post and Plaintiff's Kershaw's posted reaction to it. (The original post and Kershaw's reaction to it are hereinafter referred to as the "Facebook post.")

39. Joshua Russell currently is running against Defendant Brooks in the election for Claiborne County Sheriff.

40. As Sheriff, Defendant Brooks controls hiring and firing at the jail, and he also directs Defendant Reagan in the hiring and firing at the jail.

41. Plaintiffs both were scheduled to work on January 14, 2022, and both arrived for work at the Jail on that day as scheduled.

42. When Plaintiffs arrived on January 14, 2022, Defendant Reagan confronted Plaintiffs and asked them to meet with her in her office.

43. Defendant Reagan told Plaintiffs that she was told she had a problem and that she needed to fix it.

44. Defendant Reagan told Plaintiffs that they were being fired for the reasons given in their written separation notices.

45. Defendant Reagan provided Plaintiff West with a separation notice stating that she was being discharged. The separation notice was written on a form

and in the box provided to explain the circumstances of the discharge, Defendants wrote the following as the reason for her dismissal:

> Security Risk / leaving doors open, allowing inmates to be in unauthorized areas and allowing inmates to be out past their allowed time.

Attached as Exhibit A is a true and copy of the redacted separation notice that Defendant Reagan gave to Plaintiff West.

46. Defendant Reagan also provided Plaintiff Kershaw with a separation notice stating that she was being discharged.

47. Plaintiff Kershaw's separation notice was written on the same form as West's notice, and in the box provided to explain the circumstances of the discharge, Defendants wrote the identical statement as they had for West's Separation Notice:

> Security Risk / leaving doors open, allowing inmates to be in unauthorized areas and allowing inmates to be out past their allowed time.

Attached as Exhibit B is a true and copy of the redacted separation notice that Defendant Reagan gave to Plaintiff Kershaw.

48. At this point, Plaintiff West had worked at the jail for slightly over two years, and Plaintiff Kershaw had worked at the jail for over two- and one-half years. Neither Plaintiff had ever been disciplined or told that the were acting in a manner that was contrary to the jail's policies and procedures.

49. Throughout Plaintiffs' employment at the jail, Defendants never provided Plaintiffs with a written handbook or policy manual that set forth the purported violations asserted in the separation notices.

50. Further, Plaintiffs had never taken any action regarding leaving doors open, allowing inmates to be certain areas, or allowing inmates to be out past a given time that was not common jail practice, and that Defendants Brooks and Reagan commonly permitted to occur.

51. During their meeting with Defendant Reagan on January 14, 2022, Plaintiffs asked Defendant Reagan whether they were being fired for the Facebook post, and Defendant Reagan denied that was the case. But as Plaintiffs were leaving, Defendant Reagan made a statement to the effect that "We do have a social media policy."

52. Defendants' social media policy has never been provided to Plaintiffs.

53. Taking Defendant Reagan at her word, upon information and belief, Defendants fired Plaintiffs pursuant to a social medial policy that prohibits Claiborne County corrections officers from making public statements regarding matters of public concern in their capacity as private citizen even when the officers' interests in speaking outweigh the county's interest in promoting the efficiency of its public services.

54. In the alternative, the social media policy that Defendant Reagan referred to does not prohibit Claiborne County corrections officers from making public statements regarding matters of public concern in their capacity as private citizens even when the officers' interests in speaking outweigh the county's interest in promoting the efficiency of its public services. But despite that fact, Defendants fired Plaintiffs for the Facebook post in violation of their own policy.

55. The reasons that Defendants gave for firing Plaintiffs are a pretext. Defendants' true reason for firing Plaintiffs is that in the Facebook post Plaintiffs spoke in favor of Joshua Russell, the candidate for Claiborne County Sheriff who is running against Defendant Brooks.

56. Defendant Reagan's statement that she was told she had a problem and that she needed to fix it, appears to refer to instructions from her boss, Sheriff Brooks, that she needed to fire Plaintiffs because they had made the Facebook post—although without stating the true reason for the dismissals.

57. Thus, Defendant Brooks was personally involved in the unlawful firing of Plaintiffs for exercising their First Amendment rights.

58. Facebook is a public forum.

59. The Facebook post addressed a matter of public concern.

60. The Facebook post did not interfere with the running of the jail or in any way negatively impact the county's interests in promoting the efficiency of its public services.

### Count I – 42 U.S.C. § 1983
### Violation of First Amendment Right to Free Speech against Defendants Brooks and Reagan

61. All forgoing paragraphs are incorporated herein as if fully set forth.

62. At all times alleged, Defendants Brooks and Reagan were acting under the color of law and authority.

63. The actions of Defendants Brooks and Reagan violated the constitutional rights of Plaintiffs, including but not limited to the First Amendment as incorporated through the Fourteenth Amendment.

64. The Facebook post is a statement by Plaintiffs about a matter of public concern, namely an election for county sheriff.

65. In making the post, Plaintiffs were speaking as private citizens.

66. The Plaintiffs' interests in speaking outweighed the employer's interest in promoting the efficiency of its public services.

67. Further, it was clearly established law that it was unlawful for Defendants to fire Plaintiffs for the Facebook post.

68. Defendants' actions, as alleged, amount to the deprivation of Plaintiffs' rights to free speech guaranteed to them by the First Amendment to the United States

Constitution as incorporated through the Fourteenth Amendment, in violation of 42 U.S.C. § 1983, for which each Defendants are liable.

### Count II – 42 U.S.C. § 1983
### Violation of First Amendment Right to Free Speech against Defendant Claiborne County

69. All forgoing paragraphs are incorporated herein as if fully set forth.

70. Claiborne County has a policy or custom of prohibiting its employees from speaking as private citizens on matters of public concern even where the employee's interest in commenting on matters of public concern outweigh the county's interests in promoting the efficiency of its public services.

71. Pursuant to this policy or custom, Defendants fired Plaintiffs for their speech contained in the Facebook post.

72. Plaintiffs' dismissals were due this policy or custom of Claiborne County.

73. Claiborne County's actions in this regard amount to the deprivation of Plaintiffs' rights to free speech guaranteed to them by the First Amendment to the United States Constitution as incorporated through the Fourteenth Amendment, in violation of 42 U.S.C. § 1983, for which each Defendant Claiborne County is liable.

## Count III – 42 U.S.C. § 1983
## Violation of First Amendment Right to Intimate Association
## by Plaintiff Kershaw Only

74. All forgoing paragraphs are incorporated herein as if fully set forth.

75. Defendants' firing of Plaintiff Kershaw was motivated in substantial part by the fact that Plaintiff Kershaw's sister is married to Joshua Russell, who was the subject of the Facebook post and is running for Claiborne Sheriff running against Defendant Brooks.

76. Defendants' firing of Kershaw, motivated in substantial part by that reason, is a violation of her right to association.

77. Defendants' actions, as alleged, amount to the deprivation of Plaintiff Kershaw's right to free association guaranteed by the First Amendment to the United States Constitution as incorporated through the Fourteenth Amendment, in violation of 42 U.S.C. § 1983, for which each Defendants are liable.

## Count IV – Violation of T.C.A. § 8-8-302
## Violation of First Amendment Right to Intimate Association
## against all Defendants

78. All forgoing paragraphs are incorporated herein as if fully set forth.

79. Defendant Brooks appointed Reagan as jailer under T.C.A. § 41-4-101.

80. Thus, Defendant Reagan is a "deputy" as that term is used in T.C.A. § 8-8-302.

81. Plaintiffs suffered wrong, injury, loss, damage, and expense under T.C.A. § 8-8-302 when Defendants fired them in violation of their First Amendment rights.

82. Defendants Brooks and Reagan were acting by virtue of or under color of the office when they fired Plaintiffs.

83. Defendants therefore are liable to Plaintiffs under T.C.A. § 8-8-302 for their wrongful firing of Plaintiffs.

### COUNT V – Attorneys' Fees

84. Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover attorneys' fees and costs incurred in bringing this action.

**WHEREFORE**, Plaintiffs prays as follows:

A. That all allowable special and general damages be awarded to Plaintiffs in an amount shown by the evidence and determined by the enlightened conscious of the jury;

B. That a trial by jury be had on all issues permitted;

C. That attorneys' fees and expenses of litigation be awarded as authorized under the law; and

D. Such other further equitable or monetary relief as the Court deems just and proper.

Respectfully submitted, March 2, 2022.

                          **Hall & Lampros, LLP**

                  By:  /S/ Andrew Lampros
                        Andrew Lampros
                        TN BPR #020167
                        Patrick J. Hannon
                        GA Bar No. 074321

400 Galleria Pkwy
Suite 1150
Atlanta, GA 30339
(404) 876-8100
Fax: (404) 876-3477
alampros@hallandlampros.com
patrick@hallandlampros.com

*Attorneys for Plaintiffs*